UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JONATHAN BELTON,

         Petitioner,      Case No. 5:16-cv-10647
                     Hon. John Corbett O'Meara
v.

JEFFREY WOODS,

         Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, AND (2) DENYING CERTIFICATE OF APPEALABILITY**

This is a habeas case filed by a Michigan prisoner under 28 U.S.C. § 2254. Petitioner Jonathan Belton was convicted after a jury trial in the Oakland Circuit Court of one count of first-degree murder, MICH. COMP. LAWS § 750.316(1)(a), murder of a police officer, MICH. COMP. LAWS § 750.316(1)(c), and two counts of possession of a firearm during the commission of a felony. MICH. COMP. LAWS § 750.227b. As a result of his convictions Petitioner is currently serving a sentence of life imprisonment.[1] The petition raises a single claim: Petitioner was denied his Sixth Amendment right to a jury trial and his Fourteenth Amendment right to present a defense when the trial court refused to instruct the jury on the defense of accident and the lesser offense of involuntary manslaughter. The Court finds that Petitioner's claim is without merit. Therefore, the petition will be denied. The Court will also deny Petitioner a certificate of appealability.

I. Background

Petitioner was charged in connection with the December 28, 2008, fatal shooting of Oak Park

---

[1] Petitioner's sentence was reversed on direct appeal because he was a juvenile at the time of the offense. As of the date of this Opinion, Petitioner awaits resentencing. See Dkt. 5-1, at 1.

Police Officer Mason Samborski. The Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Eyewitness Kendiesha Jackson testified that defendant tried to deceive Officer Samborski by pretending to live in Ms. Jackson's apartment complex. She further testified that defendant tried to get an adult female to impersonate his mother after Officer Samborski stopped defendant for a traffic violation. When Officer Samborski became suspicious and indicated that he would take defendant to jail, defendant ran from the officer. Officer Samborski's attempts to restrain defendant were met with physical resistance from defendant, who also ignored the officer's verbal instructions to "stop." Defense counsel suggests that defendant's verbal requests that Samborski "get off of him" implies a struggle resulting in the accidental discharge of the weapon, but the actual testimony provided by Ms. Jackson belies that position. Ms. Jackson saw Officer Samborski and defendant struggling on the stairway when defendant uttered these remarks and no evidence indicates that Officer Samborski's gun was out of its holster at that time. Ms. Jackson saw defendant and Officer Samborski fall down a stairway in the apartment building and testified that she never saw Officer Samborski draw a weapon or have one in his hand. Defendant was positioned on top of Officer Samborski following the fall. Though Ms. Jackson did not see the shot fired, immediately after hearing the shot she saw defendant holding a gun and standing over Officer Samborski. Ms. Jackson also testified that she received a call from defendant using a "517 number," later identified as Officer Samborski's cellular telephone. According to Ms. Jackson, "he told me he was sorry what he – for what he did and he had wanted me to tell his sister that he was at home." Officer Samborski's service revolver and cellular telephone were never recovered.

> The medical examiner, Dr. Patrick Cho, testified about the results of the autopsy he conducted on Officer Samborski. Dr. Cho testified that, based on the location of the wound, its trajectory, stippling at the wound site, and the presence of an impact wound from the gun barrel, Officer Samborski was shot at close range and at an angle inconsistent with a self-inflicted wound. Dr. Cho also discounted a theory of accident, noting the absence of any defensive wounds or abrasions on Officer Samborski's hands and the presence of evidence of independent head wounds indicative of a pre-death head trauma, which could have served to impair or incapacitate Officer Samborski. Dr. Cho specifically noted the absence of a "slide injury" from the recoil of the handgun, which would be expected if Samborski had been holding the gun when it discharged.

> During trial, defense counsel repeatedly questioned witnesses about whether they had obtained or uncovered any evidence that this event was the result of an accident or that Officer Samborski was holding the gun when it discharged. Oak Park

police officer Walter Duncan responded by denying receipt of any such information. Similar queries were made to Oak Park police officer Troy Taylor. Over the prosecution's hearsay objection, Officer Taylor responded: "Some of the people I did interview indicated that Mr. Belton . . . stated . . . that something happened other than . . . what has been stated in court." Defense counsel also questioned Oak Park police detective Jason Ginopolis regarding evidence that Samborski was holding the gun when it discharged. Detective Ginopolis testified that defendant's friends made contradictory statements, but that some reported that defendant indicated the shooting was accidental.

*People v. Belton*, No. 302107, 2013 WL 5763031, at *1-2 (Mich. Ct. App. Oct. 24, 2013) (footnote omitted).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. Petitioner's brief on appeal raised four claims, three of which are not being raised in his habeas petition. Petitioner's lead claim asserted:

> Mr. Belton's Sixth Amendment right to a jury trial, and Fourteenth Amendment due process right to present a defense, was denied by the trial judge's refusal to instruct the jury on the defense theory of accident, as well as on the lesser-included charge of involuntary manslaughter, where those rulings were factual conclusions that usurped the jury's exclusive role to arrive at a determination of Mr. Belton's guilt or innocence.

The Michigan Court of Appeals affirmed Petitioner's convictions, but remanded the case for resentencing in light of *Miller v. Alabama*, 132 S.Ct. 2455 (2012), holding that automatic sentences of life imprisonment without possibility of parole for juvenile offenders violate the Eighth Amendment. *Belton*, 2013 WL 5763031, at *14.

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, raising the three claims rejected by the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed. *People v. Belton*, 846 N.W.2d 548 (Mich. 2014) (Table).

II. Standard of Review

28 U.S.C. § 2254(d)(1) curtails a federal court's review of constitutional claims raised by a state prisoner in a habeas action if the claims were adjudicated on the merits by the state courts. Relief is barred under this section unless the state court adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established Supreme Court law.

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003), quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

"[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) quoting *Williams*, 529 U.S. at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011), quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103 (internal quotation omitted).

III. Analysis

Petitioner's sole habeas claim asserts that his Sixth Amendment right to a jury trial and his Fourteenth Amendment due process right to present a defense were violated when the trial court refused to instruct the jury on the defense theory of accident and on the lesser offense of involuntary manslaughter. The Michigan Court of Appeals rejected this claim on the merits during Petitioner's appeal of right, so the question before the Court is whether the state court adjudication of the claim was contrary to, or involved an unreasonable application or, clearly established Supreme Court law.

Under AEDPA, a threshold issue is to determine whether there is "clearly established" law governing the case. See *Carey v. Musladin*, 549 U.S. 70, 74-77 (2006). Law is "clearly established" when Supreme Court precedent unambiguously provides a "controlling legal standard." *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). "[C]learly established" law should be construed narrowly. See *Wright v. Van Patten*, 552 U.S. 120, 125 (2008); *Musladin*, 549 U.S. at 76.

Petitioner cites three Supreme Court cases as establishing the rule that the state courts violated: *California v. Trombetta*, 467 U.S. 479 (1984); *Sullivan v. Lousiana*, 508 U.S. 275 (1993), and *United States v. United States Gypsom Co*, 438 U.S. 422 (1978). None of these cases clearly establish a rule applicable to Petitioner's claim.

First, *Trombetta* is an access-to-evidence case. There, the defendants claimed that their Fourteenth Amendment right to present a defense was violated when police officers destroyed breath-test samples in drunk driving prosecutions. In holding that the right to present a defense did not require the preservation of the breath test samples, the Supreme Court noted the general rule that, "[u]nder the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness. We have long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete

5

defense. To safeguard that right, the Court has developed 'what might loosely be called the area of constitutionally guaranteed access to evidence.'" *Id.,* 467 U.S. at 485. Petitioner does not claim that he was denied access to any evidence he wished to present at trial in support of an accident defense. *Trombetta* says nothing about a right to jury instructions on a theory of defense or on a lesser offense. Accordingly, the state court decision in this case could not have run contrary to, or involved an unreasonable application of, *Trombetta*.

*Sullivan* is at least a jury instruction case, but it deals specifically with a trial court's obligation to properly instruct the jury on the beyond-a-reasonable-doubt standard. *Id.*, 508 U.S. at 276. The Court in *Sullivan* held that an erroneous jury instruction equating a reasonable doubt with a "grave" or "substantial" doubt, unconstitutionally lowered the burden of proof, and that such instructional error was not amenable to harmless error analysis. *Id.*, at 279-82. Petitioner does not claim that the trial court incorrectly instructed the jury on the beyond-a-reasonable-doubt standard, and *Sullivan* says nothing about omitting instructions on a defense theory or on a lesser offense. The state court decision in Petitioner's case therefore did not contravene the rule announced in *Sullivan*.

Finally, in *United States Gypsum*, the Supreme Court held that contrary to the trial court's construction, the Sherman Act did not create a strict-liability crime, and the trial court thus erred in failing to instruct the jury on a required element of the offense. *Id.*, 438 U.S. at 446. Here, Petitioner does not allege that the trial court failed to instruct the jury on any of the elements of the charged offenses, and *United States Gypsum* says nothing about omitted instructions on a theory of defense or a lesser offense. Accordingly, the state court adjudication of Petitioner's claim did not run contrary to, or involve an unreasonable application of, any of the Supreme Court cases cited by Petitioner's counsel.

Indeed, while most lower courts have created a standard for when a defense instruction is

warranted, the United States Supreme Court has not clearly established a *constitutional* right to have a jury instructed on a theory of defense at a criminal trial. It is true that as a matter of federal criminal procedure, "a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988). But *Mathews* did not purport to create any such right guaranteed under the Constitution. While Supreme Court law recognizes a "meaningful opportunity to present a complete defense" as a matter of due process, that right only concerns the presentation of defense evidence, and it has not been extended to "restrictions imposed on a defendant's ability to present an affirmative defense." *Gilmore v. Taylor*, 508 U.S. 333, 343 (1993) (holding that even where jury instructions "created a risk that the jury would fail to consider evidence that related to an affirmative defense," state defendant's claim of instructional error would create new rule that could not be the basis for federal habeas relief).

Accordingly, the state court's decision that the trial court correctly declined to instruct the jury on the defense of accident could not have been contrary to, or an unreasonable application of, clearly established federal law as decided by the Supreme Court. See *Lopez v. Smith*, U.S. , 135 S. Ct. 1, 4 (2014); *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (where Supreme Court precedent gives no clear answer to question presented, "it cannot be said that the state court 'unreasonab[ly] appli[ed] clearly established Federal law'"); *Phillips v. Million*, 374 F.3d 395, 397-398 (6th Cir. 2004) (habeas petitioner offered no United States Supreme Court authority suggesting that state courts unreasonably applied clearly established federal law in denying him a jury instruction on self-defense).

The same conclusion holds true with respect to the failure to instruct the jury on the lesser offense of involuntary manslaughter. The right to an instruction on a lesser-included offense in a

7

noncapital case has not been clearly established by the Supreme Court. See *Parker v. Burt*, 595 Fed. Appx. 595, 605 (6th Cir. Mich. 2015). The Sixth Circuit stated, "[t]he Supreme Court . . . has never held that the Due Process Clause requires instructing the jury on a lesser included offense in a non-capital case." *McMullan v. Booker*, 761 F.3d 662, 667 (6th Cir. 2014); see also *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) ("[T]he Constitution does not require a lesser-included offense instruction in non-capital cases." (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990) (en banc)).

Even assuming that more general pronouncements by the Supreme Court regarding the right to present a complete defense as including a right to a jury instruction on a theory of defense, the result reached by the state courts was not unreasonable. The Supreme Court has held that an erroneous instruction will support a collateral attack upon the constitutional validity of a state court conviction only where the ailing instruction so infected the entire trial that the resulting conviction violates due process. *Henderson v. Kibbe*, 431 U.S. 145, 154-55 (1977).[2] In *Henderson*, the Supreme Court stressed that "[t]he question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Id*. at 154 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

Here, the Michigan Court of Appeals reasoned that the exclusion of an accident instruction did not render Petitioner's trial fundamentally unfair for the following reasons: (1) while defense

---

[2]*Henderson* involved a case where the defendants, charged with murder, robbed a highly intoxicated man and left him seated in the travel lane of a rural highway at night where he was later struck and killed by a truck. Defendants argued that their due process right to a fundamentally fair trial was violated when the causation element of murder was not defined in the jury instructions. The Court affirmed the convictions, finding that the jury instruction which merely stated that the jury was required to find among other things that the defendants' conduct "cause[d] the death of another person" combined with the arguments of counsel, which focused on that element, were enough to satisfy due process. *Id.,* 431 U.S. at 153.

8

counsel asked questions of various witnesses in an attempt to elicit testimony suggesting accident, "the attempt failed, and there was simply insufficient evidence of accident to warrant a jury instruction," *Belton*, 2013 WL 5763031, at *2-3; (2) the jury instructions on the elements of murder directed the jury to acquit Petitioner of the charges if the prosecution failed to prove beyond a reasonable doubt the requisite intent or premeditation to establish the crimes, and "[b]ecause the jury found the requisite intent to convict defendant of the charged crimes, the jury logically and necessarily had to reject the defense theory of accident. Had the jury believed that the shooting death of Officer Samborski was accidental, defendant necessarily would have been acquitted of the charges," *Id.* at *4; (3) defense counsel extensively cross-examined witnesses called by the prosecution and repeatedly questioned them regarding the possibility that the shooting was an accident and, in closing arguments, defense counsel argued there was a lack of evidence that Petitioner ever handled Officer Samborski's gun, *Id*. at *4; and (4) the jury note regarding accident did no more than "demonstrate a level of effectiveness by defense counsel in putting his theory of accident before the jury, which the jury clearly rejected when it declined to acquit defendant of the charges." *Id.*, at *5.

This decision did not amount to an unreasonable application of any broad Supreme Court standard requiring "fundamental fairness" and the right to present a complete defense at a state criminal trial. As stated by the state appellate court, Petitioner was not deprived of the right to present his defense that the shooting was accidental. Petitioner's trial counsel repeatedly and thoroughly questioned prosecution witnesses on whether the shooting might have been the result of an accident, and he was not prohibited from engaging in any cross examination or prevented from presenting any evidence in support of this defense, if there had been any to present. See e.g., *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (right to present a defense violated where defendant

prevented from presenting evidence that his confession was coerced).

Moreover, the jury was instructed that unless it found the prosecutor proved the elements of the charged crimes beyond a reasonable doubt, it was directed to acquit Petitioner. Dkt. 5-37, at 162. Regarding the crime of first-degree murder, the trial court instructed the jury regarding the malice element as follows:

> Second that the defendant intended to kill Mason Samborski[.] Third, that this intent to kill was premeditated, that is thought out beforehand. Fourth, that the killing was deliberate, which means that the defendant considered the pros and cons of the killing and thought about and chose his actions before he did it. There, there must have been real and substantial reflection for long enough to give a reasonable person a chance to think twice about the intent to kill. The law does not say how much time is needed. It is for you to decide if enough time passed under the circumstances of this case. The killing cannot be the result of a sudden impulse without thought or reflection.

Dkt. 5-37, at 169-70.

The jury found Petitioner guilty of first-degree murder. By doing so, it necessarily found beyond a reasonable doubt that Petitioner "intended to kill Mason Samborski," that "this intent was premeditated, that is thought out beforehand," "that the killing was deliberate, which means that defendant considered the pros and cons and thought about and chose his actions before he did it," and "there must have been real and substantial reflection for long enough to give a reasonable person a chance to think twice about the intent to kill." It follows necessarily from these findings that the jury found that the shooting was not accidental. As the Michigan Court of Appeals correctly noted in Petitioner's case, "[w]hen an intentional act must be established as an element of a crime, 'the occurrence of the crime is inconsistent with accident.'" *Belton*, 2013 WL 5763031, at *4 (quoting *People v. Hess*, 214 Mich. App. 33, 37 (1995)).

To be sure, a jury instruction on accident is useful in that it specifically clarifies for the jury that "if the defendant did not mean to [pull the trigger], then he is not guilty of murder. The

10

prosecutor must prove beyond a reasonable doubt that the defendant meant to [kill the victim]." See Mich. Crim. Jury Inst. 7.1. But logically speaking, the instruction does no more than provide one example of how a killing can occur without the requisite malice for murder. If Petitioner's jury followed it instructions, as this Court must presume it did, see *Richardson v. Marsh*, 481 U.S. 200, 211(1987), it necessarily found that the shooting was not accidental by finding beyond a reasonable doubt that Petitioner acted with malice.

Thus, even if it is the case that an accident instruction would have been more desirable than omitting one, it was reasonable for the state appellate court to conclude that the absence of the instruction did not render Petitioner's trial fundamentally unfair. This same analysis holds true for the involuntary manslaughter instruction. By finding Petitioner guilty of first-degree murder, the jury necessarily found that the killing was not involuntary manslaughter, which involves the killing of another without malice. See *People v. Townes*, 391 Mich. 578, 590 (1974).

Petitioner relies upon the jury note as indicating confusion on whether accident was a defense to support his contention that the instructions on the elements of the crimes were insufficient to inform the jury whether accident was a defense. The jury asked whether a guilty verdict was appropriate "if Samborski's fatal head injury was the result of an accident." Dkt. 1, App'x D. Petitioner's trial counsel responded that the trial court should instruct the jury "that it would be left for the jury to decide the appropriate outcome based on the instructions and the verdict form without any further, uh, without any further comment from the court." Dkt. 5-38, at 28. The trial court agreed with defense counsel and instructed the jury that it had copies of the appropriate instructions, and it should apply that law to the facts. Id., at 29-30. Setting aside whether defense counsel's suggestion waived any claim that an accident instruction was warranted after the jury note, by pointing the jury to its original instructions, the jury was in effect once again directed to the mental

11

state element for murder which negated a finding of guilty of first-degree murder for an accidental killing.

Petitioner relies heavily on *Barker v. Yukins*, 199 F.3d 867, 873 (6th Cir. 1999), as standing for the proposition that instructional error can violate the Sixth Amendment right to a jury trial where the trial judge instead of the jury makes a factual determination whether a particular jury instruction is warranted. *Barker* has no force here, though, for two reasons. First, it does not constitute clearly established Supreme Court law, and so it cannot be the source of the rule that the state courts unreasonably applied to establish entitlement to habeas relief under §2254(d). See *Marshall v. Rodgers*, 133 S.Ct. 1446, 1451 (2013).

Second, in *Barker* the instructional error was the failure to inform the jury that self-defense under Michigan law encompasses situations where the defendant is resisting any sexual assault - whether or not the defendant was in fear of great bodily harm or death. The missing instruction thus omitted an element of an affirmative defense that was not otherwise covered by the jury instructions. Here in contrast, by instructing the jury on the mens rea for first-degree murder, the jury was informed that if it found that the homicide was accidental then it must find Petitioner not guilty. In fact, in distinguishing *Barker*, the Sixth Circuit has noted that it has "found no Supreme Court case which holds that a criminal defendant's right to present a defense includes the right to a specific jury instruction, particularly one that goes beyond a general affirmative defense." *Newton v. Million*, 349 F.3d 873, 879 (6th Cir. 2003). As stated, accident is not an affirmative defense to murder because it is merely directed at negating the intent element. *People v. Dupree*, 284 Mich. App. 89, 99 (2009). Accordingly, *Barker* does not support Petitioner's claim for habeas relief.

Finally, even if Petitioner had a right to an accident instruction under state law if it was supported by the trial evidence, the fact remains that the evidence admitted at trial was inconsistent

with an accidental shooting. Petitioner rejoins that it is fundamentally unfair to allow the prosecution to base its case solely on circumstantial evidence, but then deny a defense instruction for want of direct evidence to support it. Petitioner reasons that if the first-degree murder instruction was warranted based on circumstantial evidence, then so too an accident instruction was warranted because the circumstances themselves of the shooting allowed for the possibility that the shooting was accidental.

The argument is specious. Petitioner's trial counsel asserted throughout trial that the victim may have accidentally shot himself after falling down the stairs. But this is not a case where the investigation revealed nothing more than a mysterious discharge of a firearm occurring after two men tumbled down a flight of stairs. Rather, there was an extensive forensic examination performed on the victim's body and at the scene that ruled-out an accidental shooting, and the evidence of Petitioner's conduct immediately after the shooting and in the hours afterward strongly suggested an intentional shooting.

The evidence presented at trial indicated that Petitioner fled up the apartment building stairs when the victim indicated he was going to place him in custody. The victim caught Petitioner at the top of the stairs, and the two began to struggle. They then tumbled down the stairs, breaking the window at the bottom of the landing. Jackson, who witnessed the first part of the struggle, retreated into her apartment only to hear a gunshot moments later. When she looked back outside her apartment, she saw the victim lying on his back with Petitioner standing over him pointing a gun at his head. Petitioner then took the victim's firearm and his cell phone, and he fled the scene.

Petitioner then called various people on the victim's phone. And before turning himself over to the police, Petitioner went to a motel and washed his hands with a substance likely containing bleach, and then he went to a friend's house to pose for photographs. When Petitioner talked to his

13

mother while in police custody, a hidden camera revealed that he never told her that the shooting was accidental. While Petitioner was in jail, he wrote song lyrics about shooting someone and fleeing.

Petitioner posits that all this evidence is also consistent with a display of false bravado, and it is nevertheless possible that the victim accidentally shot himself after tumbling down the stairs because no one who testified actually witnessed the shooting. The problem with this theory is that it was contradicted by the forensic evidence. The investigating crime-scene officers testified that there was no evidence that the shooting was accidental. The two medical examiners who examined the various injuries suffered by the victim ruled out the possibility that he accidentally shot himself. The victim had head wounds suggesting that he was unconscious or at least dazed after the fall. The barrel of the gun was mere fractions of an inch away from his temple when it was discharged. The victim had also been hit in the temple with the barrel of his gun near the location of the fatal wound. One of the medical examiners testified that the victim's hand would had to have been bent at an extremely awkward angle for him to shoot himself, and it would have been difficult at that angle for the victim to exert the ten pounds of pressure required to fire the gun. A self-inflicted wound was also contradicted by the absence of a recoil or slide injury on the victim's hand. Testimony from an officer that he obtained statements from people that the shooting occurred differently than the theory presented by the prosecutor did not constitute circumstantial evidence of an accidental shooting. The Michigan Court of Appeals found that if this testimony was being offered for the truth of the matter asserted, it was inadmissible hearsay.

Accordingly, there was simply no evidence presented at trial to indicate that the shooting was accidental. And though a surface-level view of the incident–two men struggling as they fall down a flight of steps–might be suggestive of an accidental discharge, the forensic and crime-scene

14

evidence presented at trial ruled-out this possibility, and Petitioner presented no evidence suggesting any other narrative. That is, an accident instruction was not warranted, even under the state law standard.

Therefore, because (1) Petitioner's claim cannot be supported by any clearly established Supreme Court law, (2) the state court decision nevertheless did not unreasonably apply broad Supreme Court pronouncements allowing a criminal defendant an opportunity to present a complete defense, (3) the jury's finding that Petitioner was guilty of first-degree murder meant that they necessarily found the shooting was not accidental, and (4) none of the evidence presented at trial supported a finding of an accidental shooting, Petitioner has failed to demonstrate entitlement to habeas relief. For these reasons, the petition for a writ of habeas corpus is denied.

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires that a district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11, Rules Governing Section 2254 Proceedings. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

To receive a certificate of appealability, "a petitioner must show that reasonable jurists could

debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted). Here, jurists of reason would not debate the Court's resolution of Petitioner's claims. Petitioner's claim cannot be supported by any clearly established Supreme Court law, the state court decision was nevertheless reasonable to the extent general pronouncements regarding fundamental fairness apply, by finding Petitioner guilty of first-degree murder the jury necessarily rejected an accidental shooting, and there simply was no evidence presented at trial to suggest that the accident might have been accidental. Therefore, the Court denies a certificate of appealability.

V. Conclusion

Accordingly, the Court 1) **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus, and 2) **DENIES** a certificate of appealability.

**SO ORDERED.**

s/John Corbett O'Meara
United States District Judge

Date: May 17, 2017

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, May 17, 2017, using the ECF system and/or ordinary mail.

s/William Barkholz
Case Manager